UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUZLON WIND ENERGY CORPORATION and CODAN FORSIKRING A/S, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-08-2184 |
| FITZLEY, INC., ATS WIND ENERGY SERVICES, ANDERSON TRUCKING SERVICES, INC., ATS LOGISTICS SERVICES, INC., AND ATS SPECIALIZED, INC., | § § § § § § § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

The Court addresses in this Memorandum and Order the Amended Motion to Strike Testimony and Opinions of Plaintiffs' Expert Witness [Docs. # 52, # 33] filed by Defendants ATS Wind Energy Services, Anderson Trucking Services, Inc., ATS Logistics Services, Inc., and ATS Specialized, Inc. This case arises from damage sustained to a cargo of expensive wind energy equipment, a nacelle,[1] during shipment from Freeport, Texas, to its ultimate destination in Wyoming. The owner of the

---

[1] A nacelle is the center of a windmill. It contains the engine and generating components.

nacelle, Plaintiff Suzlon Wind Energy Corporation ("Suzlon"), and Suzlon's insurer, Plaintiff Codan Forsikring A/S (collectively, "Plaintiffs"), filed the instant suit pressing Carmack Amendment[2] and state law claims against Defendant Fitzley, Inc. ("Fitzley"), as well as Defendants ATS Wind Energy Services ("ATS Wind"),[3] Anderson Trucking Services, Inc. ("Anderson"), ATS Logistics Services, Inc. ("ATS Logistics"), and ATS Specialized, Inc. ("ATS Specialized") (collectively, the "ATS Entities").

The ATS Entities filed a motion, which they later amended [Doc. # 52], with exhibits [Doc. # 33] (collectively, "ATS's Motion"), seeking to strike on numerous grounds the testimony and opinions of Suzlon's liability expert, Mr. Whitney Morgan, a "motor carrier safety consultant."[4] The motion is fully briefed and ripe for decision.[5]

---

[2]   *See* 49 U.S.C. § 14706 *et seq.* ("Carmack Amendment").

[3]   ATS Wind is described as a "division" of Anderson Trucking Services, Inc.

[4]   The ATS Entities moved to strike the following areas of Morgan's testimony: (1) Testimony regarding Fiztley's out of service percentages and safety ratings; (2) Testimony regarding insurance maintained by Fitzley and the ATS Entities, including levels of insurance; (3) Testimony regarding the bill of lading; (4) Testimony that ATS "should have conducted the basic due diligence necessary to make sure Fitzley was a reasonably safe motor carrier, and "failed to use reasonable care in choosing a motor carrier" for this load; (5) Testimony that the nacelle was damaged by Fitzley "due both to the driver's failure to ensure the load was properly secured, blocked, and braced and his failure to be knowledgeable and follow the standards set forth in the CDL manual"; (6) Testimony on the description of the accident; (7) Testimony that the nacelle was damaged due to the driver's failure to ensure the load was properly secured, blocked, and braced; (8) Testimony that Ralls, the driver, was driving too fast
(continued...)

Most of Morgan's opinions about which Defendants ATS Entities complain have been abandoned by Plaintiffs, thus rendering ATS's Motion moot in large part. The remaining contested area of testimony is Morgan's opinions regarding "the negligence exhibited by the ATS Defendants in sub-contracting with Fitzley, including discussions of the evidence of Fitzley's safety rating and out-of-service percentages."[6] Defendants ATS Entities characterize these issues to essentially involve the standard of care applicable when hiring a motor carrier, and whether an ATS Entity fails to meet that standard and Plaintiffs do not disagree.[7]

The Court concludes, after careful review of the report, Morgan's testimony, the parties' other submissions, the pleadings, and the applicable law, that ATS's Motion should be **granted**.

## I. FACTUAL BACKGROUND

---

[4] (...continued)
for conditions; (9) Testimony that Ralls should not have been on the road where the accident happened, and should have taken a different route; (10) Testimony that Ralls was not properly qualified to transport this cargo. ATS's Motion [Doc. #52], at 3.

[5] The ATS Entities filed the Motion to Strike with exhibits [Doc. # 33], which was amended [Doc. # 52]. Plaintiffs filed a Response with exhibits [Doc. # 41], and an Amended Response with exhibits [Doc. # 46]. The ATS Entities filed a Reply [Doc. # 48].

[6] Response, at 4.

[7] *See* Response, at 3-4 (eliminating from contest items 1-3 and 5-9; Reply, at 3.

Much of the relevant factual background in this case is in dispute. What is clear is that Suzlon was the owner of 29 nacelles imported into the United States. The nacelle in issue arrived at the Port of Freeport, Texas, at the Gulf Stream Marine Terminal. A dock receipt, showing that the cargo arrived in good condition, issued on August 14, 2007. Suzlon entered into an arrangement, the terms of which are hotly contested, with ATS Wind, which was acting on behalf of one or more other ATS entities,[8] for the inland transportation of the nacelle along with the 28 other similar pieces of equipment. The nacelle in issue was to travel from Freeport to its ultimate destination in Fort Bridger, Wyoming. ATS Logistics, a company affiliated with ATS Specialized, contracted with Fitzley, a trucking company, to do the actual transport of this nacelle.

On August 22, 2007, the nacelle fell off Fitzley's trailer near Green River, Wyoming, and sustained $1,021,000 in damage. Suzlon subsequently recovered $500,283.75 from Fitzley's insurers, and now seeks to recover from Fitzley and one or more of the ATS Entities the remaining property damages of $520,716.25.

## II.  STANDARD FOR ADMISSIBILITY OF EXPERTS

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the

---

[8] The identities of these entities is also in dispute.

testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. The trial judge must determine as an initial matter whether the proffered witness is qualified to give the expert opinion he seeks to express. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Under *Daubert*, the district court is to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [reliability] and of whether that reasoning or methodology can be applied to the facts at issue [relevance]." *Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93). This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Id.* at 617-618 (citing *Kumho*, 526 U.S. at 147). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 151. The Court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation. *Daubert*, 509 U.S. at 590. To demonstrate reliability, the proponent of the expert testimony must present "some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999).

The Court must consider (1) the validity of the scientific principles used; (2) the accuracy of the data relied upon by the expert; and (3) the correctness of the application of the scientific principles to the relevant data. *See, e.g., Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 (5th Cir. 1994). Four factors to consider in determining the reliability of proffered scientific evidence are (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance. *Watkins*, 121 F.3d at 989 (citing *Daubert*, 509 U.S. at 593-94). This analysis, however, is a flexible one. "[N]ot every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy*, 394 F.3d at 325.

Rule 704 of the Federal Rules of Evidence provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. The Fifth Circuit, however, "has repeatedly held that Rule 704 does not allow an expert to render conclusions of law." *United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998) (citing *Snap-Drape, Inc. v. Comm'r of Internal Revenue,* 98 F.3d 194 (5th Cir.1996)).

The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible. *Moore*, 151 F.3d at 276. The party offering the challenged expert opinions need not, however, prove "that the expert's testimony is correct." *Id.*

## III. ANALYSIS

### A. Relevance of Morgan's Opinions

Plaintiffs argue that Morgan's opinions concerning Fitzley's safety ratings and out-of-service percentages are relevant to a cause of action for "negligent hiring."[9]

---

[9] The parties agree that the elements of a cause of action for negligent hiring in Texas, as applied to this case, are that: (1) the ATS Defendants owed Suzlon a duty to sub-contract with a competent carrier; (2) the ATS Defendants breached that duty; and (3) the ATS Defendants' breach of that duty proximately caused Plaintiffs' injury. *See, e.g., EMI Music Mex. v. Rodriguez*, 97 S.W.3d 847, 858 (Tex. App. – Corpus Christi 2003, no pet.); *Verinakis v. Medical Profiles*, 987 S.W.2d 90, 97 (Tex. App. – Houston [14th Dist.] 1998, pet denied); *LaBella v. Charlie Thomas, Inc.*, 942 (continued...)

Defendants contend that these topics are irrelevant to the causes of action and theories actually pleaded by Plaintiffs in the Amended Complaint.

Plaintiffs respond by pointing to the various allegations in the First Amended Complaint to support their contentions that the negligence exhibited by the ATS Defendants in sub-contracting with Fitzley, and Fitzley's safety rating and out-of-service percentages, are relevant to the issues to be presented to the jury. Specifically, Plaintiffs allege that Suzlon entered into a contract with ATS Wind and/or Anderson Trucking to handle inland transportation of the nacelle to Wyoming;[10] that ATS Wind and/or Anderson Trucking, or ATS Logistics and/or ATS Specialized, in turn, hired drivers, trucks and trailers from Fitzley for use in transporting the [nacelle];[11] that the nacelle fell off the Fitzley truck during transit in Wyoming, and was totally destroyed;[12] and that the damage incurred to the nacelle was the direct and proximate cause of the "acts or failure to act of Defendants herein, which acts or failure to act constitute negligence, breach of contract or carriage, [and other claims not here

---

[9] (...continued)
S.W.2d 127, 137 (Tex. App. – Amarillo 1997, writ denied).

[10] Amended Complaint, ¶ 7.

[11] *Id.* ¶ 7.

[12] *Id.* ¶ 8.

relevant].”[13] Most significantly, Plaintiffs allege that "Defendants committed the following errors, which proximately caused the damages at issue: failure to exercise prudent driving while towing the Nacelle at issue; reckless or hazardous driving; losing control of vehicle; and/or speeding.”[14] Missing are allegations that Defendants did not check Fitlzey's qualifications, that an ATS entity acted below any standard of care in hiring or selecting Fitzley, or that Fitzley, as a company, was unqualified. Nor are there allegations, more specifically, that hiring Fitzley was below the standard of care in the industry generally or because the company had poor safety ratings or high out-of-services percentages. In sum, Plaintiffs have not alleged a claim, or facts to support or even suggest a claim, for negligent hiring of Fitzley.

Plaintiffs also argue that all that is required is bare bones "notice pleading" under Rule 8(a)(2) of the Federal Rules of Civil Procedure. Even if this were the case,[15] Plaintiffs here have failed to plead even a "formulaic recitation of the

---

[13]   *Id.* ¶ 10.

[14]   *Id.*

[15]   While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the United States Supreme Court has made clear that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual (continued...)

elements" of negligent hiring, much less factual allegations that "raise a right to relief above the speculative level" for such a claim. *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In sum, Plaintiffs' complaint articulates no theory that Defendants negligently hired Fitzley. The theories of negligence specified in the complaint do not address the topics in Morgan's testimony that Plaintiffs continue to proffer. Plaintiffs have not shown Morgan's testimony and opinions to be relevant and thus they are inadmissible.

### B.  Morgan's Qualifications to Render Expert Opinions Concerning the Remaining Issues

Plaintiffs also argue that Morgan's qualifications are sufficient for him to testify about standards for selecting carriers to transport equipment despite the fact that he has never done this work personally or directly overseen others performing those responsibilities. The record establishes that Morgan, from his work with the U.S. Department of Transportation, clearly has familiarity with how safety ratings are created, what "out-of-services percentages" mean, where this information can be found reliably for particular carriers, and how this data could affect the standing of

---

[15]  (...continued)
allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* at 555 n.3.

carriers. Morgan acknowledged, however, that he has not ever hired carriers to transport cargo. Indeed, he explained that he has never worked for a broker or a third-party logistics provider. Rather, he stated that he is familiar with such operations because he worked for several companies that had brokerage divisions. Based on the evidence of record, the most extensive experience Morgan personally appears to have with hiring motor carriers is his work, many years ago, between 1986 and 1990 (or 1992), for a company where *others* evaluated carriers' safety ratings before they hired carriers. Morgan does not reveal that he has personal knowledge of motor-carrier industry standards for evaluating those factors for hiring carriers generally or in the time frame pertinent to this case.

Finally, there is no dispute that Fitzley violated no laws or regulations by accepting the contract to transport the nacelle. The Court finds that Morgan's proposed opinions on violations of industry standards, applications of standards of care, and purported negligence of Defendants in placing the nacelle with Fitzley would be largely speculation, and thus are inadmissible. Speculation will not assist the jury in its fact-finding mission. *See Daubert*, 509 U.S. at 589-90. For this reason, also, Morgan is not permitted to testify on the proffered opinions.

## IV.  CONCLUSION AND ORDER

As discussed above, Defendants ATS Entities' Amended Motion to Strike the Testimony and Opinions of Plaintiffs' Expert Witness is be granted. It is

**ORDERED** that Defendants ATS Entities Motion to Strike Testimony and Opinions of Plaintiffs' Expert Witness, as amended [Docs. # 33 & # 52] is **GRANTED.**

SIGNED at Houston, Texas, this 11th day of **November, 2009.**

_____
Nancy F. Atlas
United States District Judge